UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BMO HARRIS BANK, N.A.,<br><br>                    Plaintiff,<br>v.<br><br>ELIZABETH LAILER and<br>ROBERT W. BAIRD & CO.,<br><br>                    Defendants. | Case No. 16-CV-545-JPS<br><br><br><br>ORDER |

This action, filed on May 5, 2016, arises out an employment dispute. (Docket #1). On June 21, 2016, however, the defendants filed a motion to stay the case and compel arbitration. (Docket #8). They argue that the case is subject to arbitration because: (1) the dispute is governed by the Financial Industry Regulatory Authority's ("FINRA") arbitration rules, which generally mandate the arbitration of disputes between participants in the securities industry; and (2) that the plaintiff is bound to arbitrate under a theory of estoppel. (Docket #9).[1] The plaintiff responds by arguing that: (1) it never contractually agreed to arbitrate any claims before FINRA; (2) as a bank who not registered with FINRA, it does not meet the definition of a "member" or an "associated person" who may be compelled to arbitrate; and (3) the doctrine of direct benefits estoppel does not apply to the facts of this case. (Docket #13).

The motion is now fully briefed. (Docket #8, #13, #18). For the reasons stated herein, the Court agrees that the plaintiff does not meet the criteria for

---

[1]The defendants also reference, but do not develop, arguments premised on the theories of agency and veil piercing. (Docket #9 at 8; Docket #18 at 8-9). As arguments not raised, or raised in the reply brief, are waived, the Court will not consider those issues herein. *See In re Cohen*, 507 F.3d 610, 614 (7th Cir. 2007).

mandatory arbitration before FINRA and that compelling arbitration by estoppel is not appropriate. Accordingly, the defendants' motion will be denied.

1.  BACKGROUND

The plaintiff, BMO Harris Bank, N.A. ("BMO Harris"), is a national bank organized and existing under the banking laws of the United States with its headquarters and principal place of business at 111 West Monroe Street, Chicago, Illinois 60603. (Docket #1 ¶ 4). According to the complaint,[2] Elizabeth Lailer ("Ms. Lailer") is a former employee of BMO Harris and is a citizen of the State of Wisconsin. (Docket #1 ¶ 5). Effective March 10, 2016, Ms. Lailer began to work for Robert W. Baird & Co. ("Baird") in its Waukesha office. (Docket #1 ¶ 2). The instant dispute centers on a non-solicitation clause embedded in Ms. Lailer's former employment contract that was allegedly violated during the course of her transfer to Baird. (*See* Docket #1 ¶¶ 2-3).

Ms. Lailer allegedly held two different positions while working for BMO Harris. Ms. Lailer was first employed as a Private Banker. (Docket #1 ¶ 8). Her responsibilities in that role were to provide banking services to BMO Harris's high net-worth clientele. (Docket #1 ¶ 8). However, on December 14, 2015, BMO Harris offered Ms. Lailer a new position as a Private Wealth Advisor Director II – Grade 8 with the title of "Vice President" of the bank. (Docket #1 ¶ 9; *see also* Docket #14 at 8). The terms of the offer were set forth in an electronic letter provided to Ms. Lailer on that date (the "Offer Letter"). (Docket #1 ¶ 9). While Ms. Lailer disputes having

---

[2]As explained more fully below, the defendants maintain that—in reality—Ms. Lailer was not a BMO Harris employee. (*See* Docket #9; #18).

been presented with this letter, the defendants have submitted an electronic, date-stamped message that purports to confirm Ms. Lailer's acceptance of the offer. (Docket #10 ¶ 8; Docket #14 at 5).

The Offer Letter to Ms. Lailer is marked as being sent from Leslie Meisner, Managing Director of BMO Harris. (Docket #14 at 10). It begins, by stating, "Dear Elizabeth, I am pleased to offer you a transfer to a new role with BMO Harris Bank N.A., part of BMO Financial Group (Company)." (Docket #14 at 8). Among other things, the Offer Letter also provided that Ms. Lailer would "protect the confidential and proprietary information of the Company, our clients, suppliers and employees." (Docket #14 at 9). Were she to accept the offer, Ms. Lailer would become obligated to "comply with all laws and Company policies that restrict the use, disclosure, collection and access of confidential and proprietary information." (Docket #14 at 9). Finally, the Offer Letter stated: "When your employment with the Company ends, you must return all Company property, and all Company and client information, in all formats, and you must not keep any copies." (Docket #14 at 9). Specific to the solicitation of BMO Harris employees and customers, the Offer Letter provided:

> During your employment and for twelve months following the end of your employment with the Company, you must not, directly or indirectly solicit: (i) a person who you know is an employee of the Company to leave his or her employment; and (ii) any client of the Company that you serviced during your last twelve months with the Company to offer any product or service that is the same as or similar to any product or service that you provided to that client previously.

(Docket #14 at 9). Ms. Lailer does not dispute that she accepted the role described therein on or about December 15, 2015. (Docket #10 ¶¶ 8-11).

On or about January 11, 2016, Ms. Lailer gave notice that she was quitting the Vice President position. (Docket #1 ¶ 16). Approximately two months later, Ms. Lailer allegedly sent an email to her customers soliciting them to Defendant Robert W. Baird & Co. ("Baird"). (Docket #1 ¶ 17). According to the complaint, Ms. Lailer also wrote that she was "eager to put Baird's global resources and client first culture to work toward your goals" and that she and her assistant would "contact you shortly about the transition process…." (Docket #1 ¶ 17).

As a result of this conduct, the plaintiff claims that Ms. Lailer: (1) breached her employment contract with BMO Harris; and (2) violated the Misappropriation of Trade Secrets in Violation of the Wisconsin Trade Secrets Act (Wis. Stat. Ann. § 134.90). (Docket #1).

2.   LEGAL STANDARD

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the Act, arbitration may be compelled if the following three elements are shown: "(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). "Whether a particular dispute must be arbitrated is generally a question for judicial determination, unless the parties 'clearly and unmistakably' provided otherwise in their agreement." *Duthie v. Matria Healthcare, Inc.*, 540 F.3d 533, 536 (7th Cir.2008) (quoting *Howsam v. Dean Witter Reynolds Inc.*, 537 U.S. 79, 82 (2002)).

"Whether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court on the basis of the contract entered into by the parties." *AT&T Tech., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Thus, because arbitration is "contractual by nature," a "party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (internal quotation marks omitted) (internal citations omitted).

However, the Seventh Circuit has recognized "five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." *Fyrnetics (H.K.) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1029 (7th Cir. 2002); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (recognizing that "'traditional principles' of state law" may allow a contractual arbitration agreement "to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel….'") (quoting 21 R. Lord, WILLISTON ON CONTRACTS § 57:19, p. 183 (4th ed.2001)). In determining whether a matter is arbitrable:

> courts must bear in mind that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration….[and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."

*Nielsen v. Piper, Jaffray & Hopwood, Inc.*, 66 F.3d 145, 148 (7th Cir. 1995) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

3.  ANALYSIS

The defendants argue that arbitration is appropriate because: (1) this case involves an "industry dispute" subject to FINRA Rule 13200; and (2) the doctrine of estoppel prevents the plaintiff from avoiding arbitration. (Docket #9; #18). The plaintiff argues that neither the law (FINRA Rule 13200) nor the facts support the position that arbitration is appropriate in this case. (Docket #13). The Court will address both arguments in turn.

3.1  Arbitration Under FINRA Rule 13200

The parties do not dispute the fact that the Offer Letter at the heart of this case did *not* contain an arbitration clause. In other words, this is not a typical case in which an agreement between the parties contains an express arbitration provision that the Court is required to interpret. Nonetheless, the defendants argue that arbitration must be compelled because either: (1) the bank is an "associated person" who is subject to FINRA arbitration Rule 13200(a); or (2) Ms. Lailer was *actually* employed by a related subsidiary within BMO Financial Group, known as BMO Harris Financial Advisors ("Advisors"), and, thus, the dispute "arises" out the business activities of a FINRA "member" subject to FINRA Rule 13200(a). (Docket #9 at 5-7). Neither of these arguments have merit.

FINRA Rule 13200(a) provides that "[e]xcept as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person *and* is between or among: Members; Members and Associated Persons; or Associated Persons." (emphasis added). The term "member" is defined in FINRA Rule 13100 as:

> any broker or dealer admitted to membership in FINRA, whether or not the membership has been terminated or cancelled; and any broker or dealer admitted to membership in a self-regulatory organization that, with FINRA consent, has required its members to arbitrate pursuant to the Code and/or to be treated as members of FINRA for purposes of the Code, whether or not the membership has been terminated or cancelled.

The term "Associated Person" has the same meaning as "Person Associated with a Member," which is defined in FINRA Rule 131000(r) as:

> (1) A natural person who is registered or has applied for registration under the Rules of FINRA; or
>
> (2) A sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with FINRA under the By–Laws or the Rules of FINRA.

BMO Harris satisfies neither the definition of a "member" nor the definition of an "associated person" person under the FINRA rules. First, neither party disputes that BMO Harris—a bank—is not a FINRA "member"—*i.e.*, a "broker or dealer admitted to membership in FINRA"—as that term is defined in Rule 13100. Second, based on the plain language of Rule 13100(r), the Court also rejects the defendants' argument that the bank is an "associated person" for the purpose of Rule 13200(a). *See* FINRA Rule 131000(r) (requiring an "associated person" to be a "natural person"); *see also Citigroup Glob. Markets Inc. v. Abbar*, 761 F.3d 268, 274 (2d Cir. 2014) ("In short, the rule requires a FINRA member to arbitrate disputes with its 'customers,' or the 'customers' of its 'associated persons' (who are defined as

natural persons, *see* FINRA Rule 12100(r))."). Thus, the defendants' motion rests on whether the Court agrees that this dispute: (1) "arises out of the business activities of" Advisors, an entity that *is* a FINRA member; *and* (2) is, in reality, a dispute "between" Ms. Lailer and Advisors (instead of BMO Harris). It does not.

The defendants' argument, supported exclusively by the declaration of Ms. Lailer herself and citations to BMO Harris's website, runs contrary to the heart of the plaintiff's claim. According to the complaint, the source of this dispute is a contract term contained in the Offer Letter that was purportedly delivered to Ms. Lailer by Leslie Meisner, the Managing Director of BMO Harris. (Docket #1; Docket #14 at 5-9). That Offer Letter unambiguously states that BMO Harris, not Advisors, was offering Ms. Lailer a "transfer" to a new position. (Docket #14 at 5). The defendants cite to no language within the purported agreement that would suggest that Ms. Lailer was at any time offered a role with Advisors. As one of the terms in the Offer Letter—the non-solicitation clause—is the basis for the plaintiff's breach of contract claim, the Court cannot stretch to the conclusion that this dispute is one between Advisors and Ms. Lailer. (Docket #1).

The defendants' argument—namely, that the Court should view this case as a dispute between Advisors and Ms. Lailer, instead of one between BMO Harris and Ms. Lailer—stems from their allegations that: (1) Ms. Lailer was registered with FINRA throughout the duration of her employment; (2) that Advisors "claimed" Ms. Lailer as an employee; and (3) that BMO Financial Group provides a "combined service approach" using employees from both Advisors and BMO Harris. (Docket #8, #18). These allegations do not support the defendants' theory.

First, contrary to Ms. Lailer's statements, the plaintiff's Regional President testified that BMO Harris maintains a policy of *restricting* Bank employees from engaging in FINRA related activities. (Docket #15 ¶ 8). Second, assuming Ms. Lailer maintained her FINRA license and that Advisors had "claimed" her as an employee—a concept that she does not explain or support—the Offer Letter memorializing the terms of the parties' contract undisputedly states that Ms. Lailer's offer was a "transfer to a new role with BMO Harris Bank N.A." (Docket #14, 5-9). And, it is *this* Offer Letter, and the terms embedded within it, that are being litigated in this case. Third, as stated in her declaration, Ms. Lailer concedes that BMO Harris, not Advisors or BMO Financial Group, "paid" her throughout the duration of her employment. (Docket #10 ¶ 5). Though Ms. Lailer spills much ink regarding her reliance on her FINRA license both before and after her transfer to the Vice President position, this alone does not render the dispute arbitrable.

In sum, because the parties in this matter do not meet the criteria set forth in the FINRA rules governing mandatory arbitration, the Court concludes that the dispute is not arbitrable before FINRA.[3]

3.2   Direct Benefits Estoppel

Alternatively, the defendants claim that BMO Harris is estopped from avoiding arbitration. (Docket #9; #18). "Under the theory of direct benefits

---

[3]The defendants' reply brief also argues that the purported Offer Letter in this case describes various covenants made between the "Company," who is defined as "BMO Harris Financial Group" and Ms. Lailer. (Docket #18). However, the defendants do not link this assertion to their motion, *i.e.*, they do not argue that BMO Harris Financial Group is an "associated person" (which it could not be) or a FINRA "member," such that this dispute would be subject to mandatory arbitration under FINRA Rule 13200(a). Without further development, the Court cannot conclude that arbitration is appropriate on this ground.

estoppel, '[a] nonsignatory party is estopped from avoiding arbitration if it knowingly seeks the benefits *of the contract* containing the arbitration clause.'" *Henry Techs. Holdings, LLC v. Giordano*, No. 14-CV-63-JDP, 2014 WL 3845870, at *4 (W.D. Wis. Aug. 5, 2014) (citing *Zurich Am. Ins. Co.*, 417 F.3d at 688) (emphasis added). "Instead of mere affiliation, which might well produce indirect benefits to a non-signatory," *id.*, "caselaw consistently requires a direct benefit under *the contract containing an arbitration clause* before a reluctant party can be forced into arbitration," *Zurich Am. Ins. Co.*, 417 F.3d at 688 (emphasis in original) (internal citations omitted).

The defendants' argument under the direct benefit estoppel theory is without merit. According to the complaint, the contract at the core of this case does not contain any arbitration clause. Moreover, as discussed above, this case does not arise out of Ms. Lailer's FINRA membership or any agreement or any related to it. *See Everett v. Paul Davis Restoration, Inc.*, 771 F.3d 380, 384 (7th Cir. 2014) (finding that arbitration was appropriate where the plaintiff "benefitt[ed] from trading upon the name, goodwill, reputation and other direct contractual benefits of [a] franchise agreement" that contained an arbitration clause). The defendants present the Court with no case law to support the argument that any alleged benefit that BMO Harris may have received from Ms. Lailer's FINRA membership compels the recipient beneficiary to arbitration. *See Henry Techs. Holdings*, LLC, 2014 WL 3845870, at *5 ("[T]he benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself.") (internal citations omitted). Accordingly, application of the direct benefits estoppel theory is inappropriate in this case.

4. CONCLUSION

For the reasons stated above, the Court concludes that the instant dispute is not subject to mandatory arbitration under FINRA Rule 13200(a). Nor is the doctrine of direct benefits estoppel applicable. Thus, the defendants' motion will be denied. Accordingly,

IT IS ORDERED that the defendants' motion to stay and compel arbitration (Docket #8) be the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 2nd day of August, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge